UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                              Case No. 15-20652-03

vs.

                              HON. GEORGE CARAM STEEH

EUGENE FISHER,

        Defendant.
_____/

OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS PHYSICAL EVIDENCE
AND FOR A *FRANKS* HEARING [DOCS 439 and 883]

This matter is before the court on defendant Eugene Fisher's renewed motion for a *Franks* hearing and to suppress physical evidence seized as a result of the execution of a search warrant at 18803 Lamont, Detroit, Michigan on November 12, 2015. The court held oral argument on the motion on April 30, 2018. For the reasons stated on the record and further in this order, defendant's motion for a *Franks* hearing and to suppress evidence is DENIED.

On November 3, 2015, FBI Violent Gang Task Force ("VGTF") Special Agent Vincente Ruiz ("S.A. Ruiz") submitted a search warrant application and affidavit in support to search the premises located at 18803 Lamont, Detroit, Michigan. Magistrate Judge Stafford issued a search

warrant based on the application and affidavit. During the search of the property, which was the residence of defendant Eugene Fisher, VGTF agents seized one Ruger semiautomatic .45 caliber handgun, assorted ammunition and other items which the government intends to introduce at trial. Defendant moves to suppress the evidence seized, arguing that the seizure violates his Fourth Amendment rights because the affidavit failed to establish probable cause that evidence of a crime would be found at the premises.

The following facts are taken from the affidavit submitted with the application for search warrant submitted to Magistrate Judge Stafford. Law enforcement became aware of a party to be held in memory of Devon McClure, aka "Block", a deceased Seven Mile Blood ("SMB") gang member, at the Crazy House Adult Entertainment on September 25, 2015. (Aff. ¶18). The party, known as "Block Day", was announced on social media. Agents reviewed social media accounts of Seven Mile Bloods members, who were communicating through social media to coordinate their arrival at the party.

On September 25, 2015, members of the VGTF conducted surveillance in the area of the Crazy Horse. Steve Arthur Jr. and Billy Arnold, among other Seven Mile Bloods members, were seen arriving at the club. Arthur and Arnold departed the Crazy Horse in a blue 2002

Chevrolet Trailblazer with Ohio license plate GJH1851, which had previously been reported stolen. Detroit Police Department officers attempted a traffic stop and pursuit ensued. When the car was stopped, Arthur attempted to flee on foot but was quickly apprehended. Arnold was arrested inside the vehicle. The officers recovered a Bushmaster .223 caliber rifle, with a fully loaded 40 round magazine from the rear compartment of the Trailblazer. Five cell phones were recovered inside the vehicle and another one was located on Arnold's person. (Aff. ¶20-21).

The affiant, S.A. Ruiz, explained that through his experience and training involving violent gangs he has "learned that gang members who use their own firearms in gang war situations retain access to those firearms for protection from retaliation and/or frequently pass those firearms to fellow gang members for safekeeping, in order to prevent the weapons from being seized by law enforcement officers pursuant to a search of their residences, vehicles, or persons."

A confidential human source ("CHS") provided information to the affiant on October 14, 2015, that Arthur and Arnold picked up the Bushmaster .223 caliber rifle from Eugene Fisher's house, prior to arriving at the Crazy Horse. The CHS, who is now known to be co-defendant Steven Arthur, informed the affiant that in addition to the Bushmaster rifle he saw two other pistols with extended magazines at this location. The

CHS told the affiant that it is common practice within the Seven Mile Bloods to have firearms available to multiple members at a stash house. According to the affiant, the CHS provided information about a previous shooting involving the Seven Mile Bloods that proved to be reliable. (Aff. ¶22).

The affiant corroborates 18803 Lamont as Fisher's address by citing a Detroit Police Department report from September 8, 2015 in which Fisher reported his electrical meter stolen from 18803 Lamont. In that report, Fisher provided his phone number as 313-728-0167.

To corroborate the fact that Arnold and Arthur picked up the .223 Bushmaster rifle prior to going to the Crazy Horse, the affidavit quotes three text messages from September 25, 2015 between Arnold's phone, taken during his arrest (and accessed pursuant to a search warrant), and Fisher's phone number:

- 10:22 PM from Arnold to 313-728-0167: "I'm coming to grab something be close"

- 10:26 PM from 313-728-0167 to Arnold: "At crazyhorse"

- 10:27 PM from Arnold to 313-728-0167: "I need to get in yo crib and grab my hook ups".

The affiant states that these text messages are consistent with the CHS's information about Arnold and Arthur picking up the Bushmaster .223

caliber rifle at Fisher's house prior to arriving at the Crazy Horse, and with the fact of Arnold's arrest that night while in possession of the same firearm. In this context, the affiant believes the text message conversation to be a discussion of Arnold making arrangements to pick up the Bushmaster .223 caliber rifle from Fisher's house.

A jail call was made by Arnold to 313-728-0167, Fisher's phone number, on October 1, 2015. The unidentified male from 313-728-0167 asks Arnold if anyone is talking about "that night." He further asks, "He ain't say anything about where y'all went before y'all got to the club did he?" The affiant suggests there is a logical inference, in context with other information, that Fisher is concerned that someone might say that Arnold went to Fisher's house before going to the Crazy Horse.

On November 3, 2015, Magistrate Judge Elizabeth Stafford issued a search warrant for the defendant's residence. The warrant authorized the government's seizure of "[f]irearms and/or ammunition," "[i]tems associated with firearms or ammunition," and electronic devices. The FBI executed the warrant on November 12, 2015 and recovered, among other items, a Ruger semiautomatic .45 caliber gun and assorted ammunition.

I.  False Statements or Omissions

A defendant is entitled to a pre-trial hearing to challenge an affidavit's validity if the defendant (1) "makes a substantial preliminary showing that a

false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and (2) "if the allegedly false testimony is necessary to a finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Under the second prong, if the remaining content of the affidavit, once the allegedly false material is set aside, amounts to probable cause, then no hearing is warranted. *Id*. The determination of whether a statement in an affidavit was made with reckless disregard for the truth is a fact question. *United States v. Rice*, 478 F.3d 704, 709 (6th Cir. 2007). The defendant must "point to specific false statements" and then "accompany his allegation with an offer of proof." *United States v. Green*, 572 F. App'x 438, 442 (6th Cir. 2014) (quoting *United States v. Cummins*, 912 F.2d 98, 101, 103 (6th Cir. 1990)). In order for an omission from an affidavit to be "constitutionally problematic, the material must have been deliberately or recklessly omitted and must have undermined the showing of probable cause." *United States v. Carpenter*, 360 F.3d 591, 596-97 (6th Cir. 2004) (en banc).

Defendant offers four misrepresentations or material omissions as proof of Ruiz's bad faith.

### A. Ruiz had no previous relationship with the CHS

Defendant argues that the affidavit did not allege facts showing a relationship between the affiant and the CHS or furnish details of the CHS's

track record of providing reliable tips because there were none. Both parties urge the court to follow the model approved by the Sixth Circuit in *United States v. Neal*, 577 F. App'x 434, 450 (6th Cir. 2014). The court approved the district court's decision that the supposed false statements, similar to those alleged in this case, did not entitle the defendant to a *Franks* hearing, and instead focused on the agent's corroboration of facts in the CHS's statements.

Ruiz verified that the CHS's information given in the proffer about a previous murder was true. The CHS said that Arnold was involved in the shooting of a person nicknamed "Mouse" on the same day that Devon McClure was killed. Prior to the proffer, Ruiz had not identified the shooting of Mouse on May 1, 2015, the day McClure was killed, as being connected to the SMB. Agent Ruiz attempted to verify the information. He searched shootings in Detroit on May 1, 2015 and identified the non-fatal shooting of Ralphael Carter on Detroit's east side. Ruiz then spoke with the Detroit Police Department detective who was investigating crimes committed by the 6 Mile Chedda gang and learned that Carter had a tattoo with the word "Mouse" on his arm. Ruiz clearly found this information to be credible and reliable as the shooting became the initial VICAR (Violent Crime in Aid of Racketeering) charge indicted in this investigation.

Defendant argues that the information provided by the CHS regarding

Mouse was obtained secondhand from a person the CHS knew, and included inaccuracies about the timing of the shooting relative to the shooting of Devon McClure. This information, therefore, did not support Ruiz's statement that the CHS "provided information about a previous shooting involving SMB that has proved to be reliable," aside from the name of the victim. The court disagrees with this assessment and finds that the CHS provided enough reliable information that was verified by Ruiz to support Ruiz's statement in paragraph 22.

Ruiz also corroborated information given by the CHS about a shooting that occurred at the parole office involving Arnold and Corey Bailey on July 14, 2014. The CHS identified Arnold and Corey Bailey as being involved in the murder of Djuan Page, also known as "Neff." Ruiz obtained information on October 21, 2015 that Arnold's phone was using cell towers in the area of Lawton Parole office between 10 am and 12 pm on July 14, 2014, the time period of the Djuan Page murder.

Ruiz knew the identities of many SMB members and associates and showed the CHS a photo book during the proffer interview. The CHS identified several SMB members by photo and suggested to the FBI other SMB members who should be included in the FBI's SMB photo book.

Finally, neither the absence of a prior relationship between an informant and the affiant, nor the fact that the information provided was not

connected to defendant Fisher, transforms Ruiz's statement that the CHS gave reliable information about a prior SMB shooting into a false one.

    B. <u>Omission of CHS's criminal history</u>

Defendant argues that a *Franks* hearing is required because the affiant omitted the fact that the CHS had a criminal history, including the fact that he was the driver of the Trailblazer involved in the high speed chase with police. The Sixth Circuit recognizes that most confidential informants are engaged in some sort of criminal activity, and while they might be less credible than law-abiding citizens, "that is hardly a reason to doubt the reliability of the information given to the affiant." *United States v. Fowler*, 535 F.3d 408, 416 (6th Cir. 2008). In this case, S.A. Ruiz stated that the CHS personally observed two guns at a suspected SMB member's home before going to a party with SMB members, and that the CHS said it is common practice within SMB to have firearms available to multiple members at a stash house. First, the CHS could only provide this type of information if he was close to the criminal activity, and second, that connection is evident on the face of the affidavit. Ruiz's omission of the CHS's criminal history was not reckless, nor did it undermine the probable cause analysis. *Carpenter*, 360 F.3d at 596-97.

    C. <u>Omission that CHS had been accused of dishonesty</u>

At his detention hearing before Judge Majzoub, the CHS, Steven

Arthur, falsely stated that he was not the driver of the Trailblazer. In her detention order on October 1, 2015, Majzoub concluded that Arthur's lie was the reason for his detention:

> [W]hen it became clear that Defendant openly and blatantly lied to the Court in an effort to receive a bond, and believed he could get away with it, Defendant's veracity, integrity, intelligence and trustworthiness became pivotal issues. This Court has no confidence that this Defendant, who has demonstrated such incredibly brazen behavior in open court, would comply with any conditions of bond or follow the orders of the Court.

Arthur's detention hearing occurred two weeks before his proffer session where he gave information that Ruiz was able to independently corroborate. In light of his reasonable belief that Arthur had given him reliable information at the proffer, Ruiz's omission of Arthur's false story about his own actions on the night of the arrest, made in an effort to be granted bond, does not rise to the level of bad faith requiring a *Franks* hearing.

D. Omission of grand jury testimony

Defendant cites to the fact that Ruiz omitted Arthur's grand jury testimony, given on December 16, 2015, that Arthur did not enter Fisher's home and did not see any weapons in the home on September 25, 2015, nor did he have personal knowledge that the home was used as a stash house for weapons. This testimony was given *after* Ruiz submitted his affidavit in support of a search warrant and is therefore not evidence that

Ruiz acted with reckless disregard for the truth.  *Neal*, 577 F. App'x at 451.

    E. Conclusion

The picture that emerged on the date the search warrant application and affidavit were submitted was a vastly different one from the way things looked at the time the CHS was arrested and detained.  At the detention hearing, the CHS denied driving the car or knowing about the assault rifle in the car in his attempt to be granted bond.  After signing the *Kastigar* letter that required him to testify truthfully, the CHS gave Ruiz information that Ruiz was able to corroborate.  As a matter of fact, some of that information turned out to be helpful in the investigation and lead to charges being brought against several of the defendants.

The court does not find that defendant has made a substantial preliminary showing that Ruiz included any statements in the affidavit that were made with reckless disregard for the truth.  Therefore, the court denies defendant's request to hold a *Franks* hearing.

II.    Probable Cause

To evaluate probable cause, courts are instructed "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  The facts and circumstances taken as a whole

must give the magistrate probable cause to believe the items sought would be found during the search. *See, id., Zurcher v. Stanford Daily*, 436 U.S. 547, 566 (1978).

S.A. Ruiz's affidavit described his personal knowledge of the investigation based on his participation which included interviewing witnesses and communicating with other law enforcement agents about their personal knowledge of the events described. Ruiz next describes how he came to know about the party at the Crazy Horse on September 25, 2015 and what was observed by FBI surveillance. He describes the car chase by Arthur and Arnold, the arrest, and what police seized from the car. Ruiz describes what Arthur told him during the proffer about going to defendant's house with Arnold before the party to pick up the rifle that was found when they were arrested. Arthur stated that he saw two other pistols with extended magazines and an AK-47 at the defendant's residence and that it is common practice within SMB to have firearms available for members at stash houses. Ruiz then averred that the CHS provided information about a previous shooting involving SMB that proved to be reliable.

Ruiz continued to set forth how law enforcement confirmed the defendant's address and phone number. He then explained that a search warrant was executed on Arnold's cell phone which was recovered during

his arrest. Text messages between Arnold and the defendant on September 25, 2015 were consistent with Arnold stopping by Fisher's house to pick up the Bushmaster .223 caliber rifle ("grab my hook ups"). More support comes from Arnold's jailhouse call to defendant on October 1, 2015 where defendant asks Arnold, "He ain't say anything about where y'all went before y'all got to the club did he?" Ruiz explains that based on the CHS's proffer, the text messages and Arnold's arrest, this logically refers to Arnold retrieving the rifle from defendant's house.

When a search warrant affidavit relies on hearsay information, such as from a CHS, the court must consider the veracity, reliability and basis of knowledge for that information as part of the totality-of-the-circumstances review. *United States v. Helton*, 314 F.3d 812, 819 (2003). In this case, most of the CHS's information was corroborated by the facts that occurred before and after Arnold's arrest in possession of the Bushmaster, including Arnold's text messages with Fisher. The totality of the circumstances in the affidavit establish more than a "mere suspicion" that guns would be found in Fisher's house. When looked at in the totality, the information provided by the CHS, along with the background knowledge of the affiant and the other corroborating facts included in the affidavit, gave the magistrate judge enough information to find probable cause to issue the search warrant for guns at Fisher's residence.

For the reasons stated, the court finds that probable cause existed for the Magistrate Judge to issue the search warrant for 18803 Lamont based on the information included in the application and affidavit. Defendant's motion to suppress and request for a *Franks* hearing is denied.

IT IS SO ORDERED.

Dated: May 9, 2018

>s/George Caram Steeh
>GEORGE CARAM STEEH
>UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on May 9, 2018, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---