Case: 19-1220   Document: 42-1   Filed: 08/19/2020   Page: 1   (1 of 18)

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  | 100 EAST FIFTH STREET, ROOM 540 |  |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed:  August 19, 2020

Mr. Andrew Goetz
Mr. Daniel R. Hurley
United States Attorney's Office
211 W. Fort Street
Suite 2001
Detroit, MI 48226

Mr. Kevin Michael Schad
Federal Public Defender's Office
250 E. Fifth Street
Suite 350
Cincinnati, OH 45202

> Re: Case No. 19-1220, *USA v. Eugene Fisher*
> Originating Case No. : 2:15-cr-20652-3

Dear Counsel,

   The Court issued the enclosed opinion today in this case.

                                        Sincerely yours,

                                        s/Cathryn Lovely
                                        Opinions Deputy

cc:  Mr. David J. Weaver

Enclosure

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0487n.06

No. 19-1220

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Aug 19, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| EUGENE FISHER, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE:  BATCHELDER, GIBBONS, and SUTTON, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge.  In January 2018, a federal grand jury returned a thirty-five-count indictment against Eugene Fisher and twenty other defendants.  Fisher was charged with various offenses related to his alleged criminal activities in aid of racketeering with the Seven Mile Bloods ("SMB"), a Detroit gang, as well as two counts of being a felon in possession of a firearm.  After a jury trial, the jury only convicted Fisher of the two felon-in-possession counts.  The district court sentenced Fisher to ninety months' imprisonment.

Fisher raises several issues on appeal.  First, Fisher argues that the district court erred in denying him a *Franks* hearing.  Second, he claims the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), holding that the government must prove a defendant had knowledge of his status as a felon under 18 U.S.C. § 922(g), requires this panel to vacate his conviction.  Similarly, Fisher argues that one of his § 922(g) convictions is not supported by substantial evidence.  Finally, Fisher claims that the district court erred in imposing sentencing enhancements for obstruction of justice and possession of three or more firearms.

We conclude that none of Fisher's arguments have merit and affirm the judgment and sentence.

Case No. 19-1220, *United States v. Fisher*

I.

A grand jury indicted Fisher on one count of RICO conspiracy in violation of 18 U.S.C. § 1962(d); one count of attempted murder in aid of racketeering in violation of 18 U.S.C. § 1959; one count of assault in aid of racketeering in violation of 18 U.S.C. § 1959; two counts of using a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c); and two counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). A jury found Fisher not guilty of the RICO conspiracy, attempted murder in aid of racketeering, assault in aid of racketeering, and both counts of using a firearm in furtherance of a crime of violence. The jury found Fisher guilty of the two counts of being a felon in possession of a firearm and ammunition.

A.

This case arises from a joint federal and state investigation into gang-related violence in Detroit, Michigan. The Seven Mile Bloods ("SMBs") are a gang that controls "the Red Zone," a specific geographical area in Detroit from Seven Mile to Eight Mile and from Kelly Road to Gratiot Avenue.

Fisher, also referred to as "Fes," was not a member of the SMB, but was part of a precursor gang to the SMB known as the "Ruthless Clan" or "R.C." As a Ruthless Clan member, Fisher was associated with the SMBs but was not a member of the SMB. As an associate, Fisher stored firearms for SMB members in his residence along with his own firearms.

On September 25, 2015, the SMB planned a "Block Party" at the Crazy Horse strip club. The Federal Bureau of Investigation ("FBI"), Michigan State Police, and Detroit Police Department found out about the party from SMB members' social media accounts and coordinated efforts to stop identified SMB members after they exited the party. Two SMB members, Steve Arthur and Billy Arnold, exited the party and left in a Chevy Trailblazer. After a high-speed chase with officers, Arthur and Arnold were arrested and charged in federal court. Upon searching the vehicle, the officers recovered an AR-15 .223 Bushmaster rifle ("Bushmaster") and several cell phones.

On September 27, 2015, two days after the arrests of Arthur and Arnold, Fisher posted on Facebook "I almost lost two year's out my life there [sic] weekend! God is, emojis, FREE MY SQUAD!" DE 1154, Trial Tr., PageID 14495. On October 1, 2015, Arnold made a call from jail

2

Case No. 19-1220, *United States v. Fisher*

to a phone number associated with Fisher.  The unidentified male on that call asked: "Is that n***a talking about anything about that night?"  *Id.*  Arnold responded, "[s]hit, yeah.  Hell yeah."  *Id.*  The unidentified male responded, "[h]e ain't say anything about where y'all went before y'all got to the club did he?"  *Id.*  Arnold responded: "No."  *Id.*

On October 2, 2015, Fisher sent a Facebook message to "Love Honey" stating, "[t]he Feds just took my ar that my bro holding."  *Id.* at 14,497.  Included with the message were two photographs.  One photograph was of a person who looks like Fisher at a table holding what appears to be a firearm and another person holding what appears to be an AR-15 rifle.  The second photograph shows a person who looks like Fisher separately holding what looks to be the same firearm pointed at the camera.

At a September 29, 2015, detention hearing, Arthur "adamantly denied that he was the driver of the Chevy Trailblazer."  DE 883-2, Detention Hr'g, PageID 5,963.  However, at a continuation of the detention hearing on October 1, 2015, the government offered evidence that Arthur was the driver of the vehicle, and Arthur admitted he was the driver.  Given Arthur's deception, the district court found that Arthur's "veracity, integrity, intelligence, and trustworthiness became pivotal issues" and denied Arthur bond.  *Id.* at 5,964.

On November 3, 2015, Magistrate Judge Stafford approved a search warrant for Fisher's residence, 18803 Lamont, based on FBI Agent Vicente Ruiz's attached affidavit.  The search warrant authorized a search of the residence for firearms and ammunition; other items associated with firearms or ammunition such as magazines, casings, documentation of ownership, and safes; electronic devices; and information establishing ownership, possession, or control of the premises.

In support of the search warrant, Ruiz provided a thirteen-page affidavit detailing his background experience with the FBI, investigation of the SMB gang, and related SMB criminal activity.  Ruiz stated that a confidential informant, later identified as Arthur, "picked up the Bushmaster . . . from [Eugene Fisher's] house, located at 18803 Lamont . . . , prior to arriving at the Crazy Horse."  DE 883-1, Search Warrant Aff., PageID 5958.  The confidential informant further relayed that he "had seen two other pistols with extended magazines at this location" and "that it is common practice within the SMB to have firearms available to multiple members at a stash house."  *Id.*  Ruiz further included that the confidential informant "has provided information about a previous shooting involving the SMB that has proved to be reliable."  *Id.*  To corroborate

the confidential informant's information, Ruiz confirmed that Fisher lived at 18803 Lamont by referencing a prior police department report where Fisher reported that his electrical meter was stolen. That report provided Fisher's address and a phone number.

Further, after searching Arnold's cell phone pursuant to a search warrant after his arrest, Ruiz corroborated the information about picking up the AR-15 rifle from Fisher's residence with text messages between Arnold and Fisher. Prior to arriving at the party, Arnold texted Fisher stating, "I'm coming to grab something be close." DE 1154, Trial Tr., PageID 14,487. Fisher texted back, "[a]t crazyhorse." *Id.* Arnold responded, "I need to get in yo crib and grab my hook ups." *Id.* Ruiz's affidavit stated that this conversation related to "[Arnold] picking up the Bushmaster .223 caliber rifle from [Fisher's] house." DE 883-1, Search Warrant Aff., PageID 5959. Surveillance of the residence showed a vehicle registered to Fisher parked in the driveway of the residence. The affidavit also relied on the call Arnold made from jail to the phone number associated with Fisher. Based on the confidential informant information and the independent corroboration, Ruiz "believe[d] there [wa]s probable cause to believe that [Fisher] is an associate of a racketeering enterprise that utilizes the target address in order to facilitate the criminal acts of that enterprise, and that evidence of the enterprise's crimes will be found in the target address." *Id.* at 5960.

The search warrant for 18803 Lamont was executed on November 12, 2015. The police seized a .45 caliber Ruger semi-automatic handgun ("Ruger handgun"), various sizes of ammunition, various types of firearm magazines, electronic devices, a receipt, and gaming magazines with Fisher's address.

A grand jury indicted Fisher on one count of RICO conspiracy in violation of 18 U.S.C. § 1962(d); one count of attempted murder in aid of racketeering in violation of 18 U.S.C. § 1959; one count of assault in aid of racketeering in violation of 18 U.S.C. § 1959; two counts of using a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c); and two counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). The first 922(g) violation, Count 33, related to Fisher's constructive possession of the Bushmaster rifle. The second 922(g) violation, Count 34, related to Fisher's possession of the Ruger handgun found in his residence.

Case No. 19-1220, *United States v. Fisher*

B.

Fisher filed his first motion to suppress the evidence obtained from the search of 18803 Lamont on December 18, 2016. This motion was held in abeyance. Fisher renewed his motion to suppress and requested a *Franks* hearing on February 14, 2018. In support of a *Frank*s hearing, Fisher pointed to nine allegedly false statements or omissions in Ruiz's affidavit supporting the search warrant without which, Fisher alleged, there was no probable cause for the search. Specifically, Fisher alleged that Ruiz omitted that Arthur, the confidential informant, was involved in a high-speed chase with police and provided false information upon arrest regarding his knowledge of the Bushmaster found in the vehicle; Arthur misled the judge at his detention hearing regarding whether he was the driver of the vehicle; Arthur had a criminal history; Ruiz did not have a relationship with Arthur or track record of providing reliable tips; and Arthur's later grand jury testimony contradicted information in the affidavit. Fisher further alleged that Ruiz's statement that Arthur's information about a previous shooting "proved to be reliable" was intentionally false or made with reckless disregard to the truth. DE 883, Renewed Mot. to Suppress, PageID 5938.

Assessing Fisher's *Franks* motion, the district court rejected the "four misrepresentations or material omissions" Fisher pointed to in Ruiz's affidavit. DE 987, Order & Op., PageID 9017. First, the district court found true Ruiz's statement that the confidential informant had "provided information about a previous shooting involving SMB that has proved to be reliable." *Id.* at 9019; *see also id.* at 9018–20. "Ruiz verified that [Arthur's] information given in the proffer about [the] previous murder was true." *Id.* at 9018. "Ruiz clearly found this information to be credible and reliable as the shooting became the initial [VICAR] charge indicted in this investigation." *Id.* Second, regarding omission of Arthur's criminal history, the district court found that the criminal connection was "evident on the face of the affidavit" because Arthur "could only provide [information about the stash house] if he was close to the criminal activity," and Ruiz was not reckless. *Id.* at 9020. Third, because Arthur's detention hearing, where the magistrate judge found Arthur to have blatantly lied about driving the Chevy Trailblazer, "occurred two weeks before his proffer session where he gave" the information to Ruiz, the omission of the false story to the magistrate judge did "not rise to the level of bad faith requiring a *Franks* hearing." *Id.* at 9021.

5

Case No. 19-1220, *United States v. Fisher*

Finally, because Arthur gave his grand jury testimony after Ruiz submitted the warrant application, the district court held that Ruiz could not have acted with reckless disregard for the truth.

## C.

Trial began June 5, 2018, and the jury returned its verdict on August 27, 2018.  Fisher stipulated that "prior to September 26, 2015, [he] had been convicted of at least one felony.  He knew that he was convicted of one felony, and he had not had his conviction expunged nor his right to possess a firearm restored."  DE 1156, Trial Tr., PageID 14,701.  Given this stipulation, when instructing the jury on the § 922(g) offense, for the first element requiring that "[t]he defendant has been convicted of a crime punishable by imprisonment for more than one year," the district court stated that "[t]he government and the defendant have agreed that defendant has previously been convicted of a crime punishable by imprisonment for more than one year."  DE 1159, Jury Instrs., PageID 15,123, 15,125.  The jury found Fisher guilty of both § 922(g) counts and not guilty on the remaining counts.

## D.

Fisher moved for acquittal or a new trial, contending that the evidence was insufficient to sustain Count 33, the § 922(g) conviction relating to the Bushmaster rifle.  He argued that the government failed to provide evidence sufficient to establish a nexus between him and the Bushmaster rifle to satisfy the government's burden to prove Fisher knowingly possessed the Bushmaster rifle.  Rejecting this argument, the district court denied the motion after finding that "there [wa]s substantial evidence from which a rational trier of fact could find that Fisher possessed the Bushmaster AR."  DE 1266, Order Den. Mot. for J. of Acquittal, PageID 16,257.

## E.

At the sentencing hearing, the district court heard argument on Fisher's objections to the Presentence Report ("PSR").  Specifically, Fisher objected to factual descriptions of Fisher as a gang member and his affiliation with SMB, the enhancements for obstruction of justice and possession of three or more firearms, and argued that the deduction for acceptance of responsibility should apply.  No additional evidence was presented at the sentencing hearing.

Case No. 19-1220, *United States v. Fisher*

The district court "adopt[ed] both the factual findings as well as the scoring of the offense score in this case as submitted by probation," and rejected Fisher's arguments that the enhancements did not apply. DE 1417, Sentencing Tr., PageID 18,713. The district court thought the government's arguments were

> consistent with the evidence submitted at trial, and that the . . . scoring of the . . . specific offense variable that includes the obstruction of justice [was] probably the closest of the three variables at issue here, but nevertheless, the relevant conduct included as argued by the government, [the district court] th[ought] demonstrated a lack of acceptance of responsibility . . . .

*Id.* Therefore, the district court found that with a base level of 20 and an increase of 6 levels for the enhancements, Fisher's adjusted offense level was 26, and he had a criminal history category of III. The court calculated the Guidelines range as 78 to 97 months. After assessing the § 3553(a) factors, the district court imposed a sentence of 90 months' imprisonment. Fisher timely appealed.

II.

A.

Fisher first argues that the district court erred in denying his motion for a *Franks* hearing. Without Ruiz's omission of information about Arthur's veracity and lack of reliability as a confidential informant, he argues, the affidavit "would not have allowed any neutral and detached magistrate to find a connection between criminal conduct and Fisher's residence." CA6 R. 28, Appellant Br., at 30.

"[A] presumption of validity [exists] with respect to the affidavit supporting the search warrant." *Franks v. Delaware*, 438 U.S. 154, 171 (1978). "In a *Franks* hearing, a court determines whether to suppress the fruits of an executed search warrant, where the warrant was the result of a false statement." *United States v. Crawford*, 943 F.3d 297, 309 (6th Cir. 2019) (citing *Franks*, 438 U.S. at 171).

We review a "district court's denial of a *Franks* hearing under the same standard as for the denial of a motion to suppress: the district court's factual findings are reviewed for clear error and its conclusions of law are reviewed de novo." *United States v. Bateman*, 945 F.3d 997, 1007–08 (6th Cir. 2019) (quoting *United States v. Graham*, 275 F.3d 490, 505 (6th Cir. 2001)). "Whether to hold an evidentiary hearing based upon a challenge to the validity of a search warrant's affidavit,

Case No. 19-1220, *United States v. Fisher*

given alleged misstatements and omissions, is committed to the sound discretion of the district court." *United States v. Young*, 847 F.3d 328, 348 (6th Cir. 2017).

"A defendant is entitled to a *Franks* hearing if he: 1) makes a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit; and 2) proves that the false statement or material omission is necessary to the probable cause finding in the affidavit." *Id.* at 348–49 (quoting *United States v. Pirosko*, 787 F.3d 358, 369 (6th Cir. 2015)).

"*Franks* is generally inapplicable to [] omissions." *United States v. Alford*, 717 F. App'x 567, 570 (6th Cir. 2017). "When there is a material omission of fact, a *Franks* hearing is granted only if the defendant 'makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause[.]'" *United States v. Hampton*, 760 F. App'x 399, 404 (6th Cir. 2019) (quoting *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998)). "Only after the defendant makes this showing may the court consider the veracity of the statements in the affidavit or the potential effect of any omitted information." *United States v. Archibald*, 685 F.3d 553, 558–59 (6th Cir. 2012). "[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Franks*, 438 U.S. at 171–72.

Fisher points to two alleged omissions from Ruiz's affidavit: (1) the fact that Arthur lied to the court at his initial detention hearing; and (2) Arthur's criminal history and lack of relationship with Arthur as a confidential informant. But the district court did not err in denying Fisher a *Franks* hearing because he failed to make a sufficient showing that Ruiz intended to mislead the magistrate judge by omitting relevant information from the affidavit.

First, regarding the detention hearing, Fisher only alleged that Ruiz knew that Arthur "had his detention hearing" at the time he swore out the affidavit—Fisher did not allege that Ruiz knew of Arthur's deception or the court's rebuke of Arthur. In order to show Ruiz intentionally omitted the information or did so with a reckless disregard for the truth, Fisher needed to provide evidence showing that Ruiz knew of Arthur's dishonesty at his detention hearing prior to swearing out the

8

Case No. 19-1220, *United States v. Fisher*

affidavit.  *See Alford*, 717 F. App'x at 570–71 (noting that the defendant presented no evidence that the officer knew information relating to the alleged omission).

Similarly, Ruiz's omissions of Arthur's criminal history and lack of a prior relationship as a confidential informant—upon which Fisher bases his argument that "the affidavit failed to provide information which showed that the informant[']s[] credibility could be questioned," *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997)—are also insufficient to warrant a *Franks* hearing because there is no evidence Ruiz omitted this information with an intent to mislead.  Moreover, Ruiz's affidavit provided sufficient context regarding the confidential informant such that adding the omitted information about Arthur's criminal history and lack of prior relationship would not defeat the showing of probable cause.  *See Atkin*, 107 F.3d at 1217. As a noted SMB member, the confidential informant "could only provide this type of information if he was close to the criminal activity," and "that connection is evident on the face of the affidavit." DE 987, Order & Op., PageID 9020.  This court has found similar omissions of a confidential informant's criminal history, compensation for work, and lack of a relationship insufficient to warrant a *Franks* hearing when other contextual factors are present.  *See United States v. Franklin*, 622 F. App'x 501, 511–12 (6th Cir. 2015); *United States v. Jones*, 533 F. App'x 562, 568–69 (6th Cir. 2013); *United States v. Fowler*, 535 F.3d 408, 416 (6th Cir. 2008).

The district court did not err in denying a *Franks* hearing because Fisher did not make the necessary showing of "*an intent[] to mislead*," *see Mays*, 134 F.3d at 816, to support his motion for a *Franks* hearing.

### B.

Fisher next argues that the panel must vacate his conviction in light of the Supreme Court's holding in *Rehaif v. United States*, 139 S. Ct. 2191 (2019).  In *Rehaif*, the Supreme Court held that 18 U.S.C. § 922(g) "require[s] the Government to establish that the defendant knew he violated the material elements," including knowledge of his status as a felon.  *Id.* at 2196–97.  This is because "the defendant's status is the 'crucial element' separating innocent from wrongful conduct."  *Id.* at 2197.

The district court did not instruct the jury on the § 922(g) counts that it was required to determine whether Fisher knew his status as a felon.  Fisher did not object to the instruction on

Case No. 19-1220, *United States v. Fisher*

this ground. Because Fisher failed to challenge the lack of a jury instruction regarding knowledge of his felony status, this court reviews his claim for plain error. *United States v. Mullet*, 822 F.3d 842, 847–48 (6th Cir. 2016). "In reviewing for plain error, we must consider whether there was plain error that affects substantial rights and that, in our discretionary view, seriously affects the fundamental fairness, integrity, or public reputation of judicial proceedings." *United States v. Barnett*, 398 F.3d 516, 525 (6th Cir. 2005); s*ee also United States v. Olano*, 507 U.S. 725, 736–37 (1993) (providing that to show plain error, a defendant must show (1) an error (2) that was obvious and (3) that affected the defendant's substantial rights and (4) that seriously affected the fairness, integrity, or public reputation of judicial proceedings).

Although "[t]he absence of an instruction requiring the jury to find that [Fisher] knew he was a felon was clear error under *Rehaif*," *United States v. Hollingshed*, 940 F.3d 410, 415 (8th Cir. 2019) (quoting *United States v. Benamor*, 937 F.3d 1182, 1188–89 (9th Cir. 2019)), Fisher cannot show that this error affected his substantial rights because he stipulated to both his status as a felon and his knowledge of that status. *See also United States v. Williams*, 946 F.3d 968, 971 (7th Cir. 2020). Fisher stipulated that "prior to September 26, 2015, [he] had been convicted of at least one felony. He knew that he was convicted of one felony, and he had not had his conviction expunged nor his right to possess a firearm restored." DE 1156, Trial Tr., PageID 14,701. "Although the stipulation of a prior felony does not automatically establish knowledge of felony status, it is strongly suggestive of it." *United States v. Conley*, 802 F. App'x 919, 923 (6th Cir. 2020). Moreover, the error did not taint the fairness or integrity of the proceedings because rational jurors could have inferred knowledge of Fisher's prohibited status from proof of the prohibited status—here Fisher's three prior felony convictions. *See United States v. Raymore*, ___ F.3d ___, No. 19-3703, at 14 (6th Cir. July 13, 2020). Fisher cannot "'show a reasonable probability that, but for the error,' the outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004)). We conclude the error was harmless.

Case No. 19-1220, *United States v. Fisher*

## C.

Fisher next challenges the sufficiency of the evidence of Count 33, arguing that the government introduced "no proof that [he] ever actually or constructively possessed" the Bushmaster rifle.  CA6 R. 28, Appellant Br., at 17–18.  We disagree.

We review de novo the district court's denial of a motion for acquittal based on insufficient evidence, "viewing the evidence in 'a light most favorable to the prosecution, giving the prosecution the benefit of all reasonable inferences from the testimony.'"  *United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010) (quoting *United States v. McAuliffe*, 490 F.3d 526, 537 (6th Cir. 2007)).  "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  "A defendant claiming 'insufficiency of the evidence bears a very heavy burden.'"  *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006) (quoting *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986)).  Fisher has not met this burden.

"To obtain a conviction pursuant to § 922(g)(1), the government must prove beyond a reasonable doubt: (1) that the defendant has a prior conviction for a crime punishable by imprisonment for a term exceeding one year; (2) that the defendant thereafter knowingly possessed the firearm and ammunition specified in the indictment; and (3) that the possession was in or affecting interstate commerce."  *United States v. Schreane*, 331 F.3d 548, 560 (6th Cir. 2003) (quoting *United States v. Daniel*, 134 F.3d 1259, 1263 (6th Cir. 1998)).  Fisher only argues that the government failed to prove the second element, that he knowingly possessed the Bushmaster rifle.  Fisher contends that because he was not a passenger in the Chevy Trailblazer with Arnold and Arthur and no witness testified that he controlled the firearm on that date, the government failed to prove Fisher possessed the firearm.

"Under § 922(g), either actual or constructive possession is sufficient."  *United States v. Farrad*, 895 F.3d 859, 871 (6th Cir. 2018) (quoting *United States v. Harris*, 293 F.3d 970, 975 (6th Cir. 2002)).  "Actual possession requires that a defendant have immediate possession or control of the firearm, whereas constructive possession exists when the defendant 'does not have possession but instead knowingly has the power and intention at a given time to exercise dominion and control over an object, either directly or through others.'"  *United States v. Campbell*, 549 F.3d

364, 374 (6th Cir. 2008) (quoting *United States v. Grubbs*, 506 F.3d 434, 439 (6th Cir. 2007));
*Grubbs*, 506 F.3d at 439 (stating that "constructive possession may be proven if the defendant
merely had 'dominion over the premises where the firearm is located.'" (quoting *United States v.
Gardner*, 488 F.3d 700, 713 (6th Cir. 2007))). Moreover, "[n]umerous cases hold
that . . . eyewitness testimony describing a firearm actually possessed by the defendant that
matches a firearm later recovered by the police . . . sufficiently connects the gun described to the
gun found." *United States v. Arnold*, 486 F.3d 177, 182–83 (6th Cir. 2007) (collecting cases).

Upon review, the record reflects that there was sufficient evidence to support the jury's
verdict. Fisher was charged with having knowingly possessed the Bushmaster rifle "[o]n or about
September 26, 2015." DE 812, Sixth Superseding Indictment, PageID 4631–32. Although Fisher
did not have actual possession of the Bushmaster at the time the government seized it from Arthur
and Arnold, there was sufficient evidence from which the jury could infer that Fisher knowingly
possessed the Bushmaster rifle at his residence earlier that evening. First, the jury could infer from
the text messages between Fisher and Arnold on September 25, 2015 that Arnold had gone to
Fisher's residence to "grab [his] hook ups" prior to the party at Crazy Horse. DE 1154, Trial Tr.,
PageID 14487. When the police stopped Arthur and Arnold and recovered the Bushmaster from
the vehicle, the jury could infer that the Bushmaster was the weapon picked up from Fisher's
residence earlier that evening. The short period between the text messages sent around 11 P.M.
and seizure of the Bushmaster at 2 A.M. permits this reasonable interference.

Additionally, the following day, Fisher posted a Facebook message stating "I almost lost
two year's out my life [this] weekend!" DE 1154, Trial Tr., PageID 14,495. And a week after the
seizure of the Bushmaster, on October 2, 2015, Fisher Facebook messaged "Love Honey": "The
Feds just took my ar that my bro holding." *Id.* at 14,497. Included with the Facebook message is
a photograph of a person that looks like Fisher holding an automatic rifle and a second person
holding what looks like an AR-15. Fisher also Facebook messaged Charles Lee that he was
"worried [Arthur] might tell on [him]." *Id.* at 14,500. Viewing all of the evidence in the light
most favorable to the government, a rational trier of fact could conclude that Fisher knowingly
possessed the Bushmaster rifle at his residence prior to Arnold picking it up before the party at
Crazy Horse.

Case No. 19-1220, *United States v. Fisher*

D.

Finally, Fisher argues that the district court erroneously imposed enhancements for obstruction of justice, U.S.S.G. § 3C1.1, and possession of three or more firearms, U.S.S.G. § 2K2.1(b)(1)(A).  In addition to arguing that the enhancements are unsupported by the record, Fisher also contends that the district court failed to make factual findings supporting the enhancement.

1.

We initially address Fisher's contention that his sentence is procedurally unreasonable because the district court failed to make sufficient factual findings so as to permit appellate review of the imposition of the sentencing enhancements.

"When selecting an appropriate sentence, the district court 'must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.'"  *United States v. Fowler*, 819 F.3d 298, 304 (6th Cir. 2016) (quoting *United States v. Recla*, 560 F.3d 539, 547 (6th Cir. 2009).  For a sentence to be procedurally reasonable, a district court must make adequate factual findings as to the imposition of contested sentencing enhancements.  *United States v. Davis*, 924 F.3d 899, 904 (6th Cir. 2019).  "[I]f the defendant raises a dispute to the presentence report, the 'court may not merely summarily adopt the factual findings in the presentence report or simply declare that the facts are supported by a preponderance of the evidence.'"  *United States v. Ross*, 502 F.3d 521, 531 (6th Cir. 2007) (quoting *United States v. Solorio*, 337 F.3d 580, 598 (6th Cir. 2003).

Here, Fisher did not dispute the facts as detailed in the PSR.  Instead he argued that the conclusions and inferences to be drawn from those facts did not support the imposition of the two sentencing enhancements.  Without a dispute as to the facts in the PSR or any additional evidence produced at the sentencing hearing contradicting these facts, the district court was able to summarily adopt the factual findings in the PSR.  Additionally, after hearing argument by both parties, the district court clearly concluded that it found that the evidence submitted at trial and in the PSR justified the imposition of the sentencing enhancements.

13

Case No. 19-1220, *United States v. Fisher*

2.

Fisher next argues that the district court erred in imposing a sentence enhancement for obstructing justice. *See* U.S.S.G. § 3C1.1.

This court has noted that our precedent discussing the relevant standard of review of a district court's decision to impose the obstruction of justice enhancement has been unclear. *United States v. Thomas*, 933 F.3d 605, 608–10 (6th Cir. 2019) (collecting cases). Our cases appear to agree that we review factual determinations underlying the imposition of the enhancement for clear error and legal interpretations de novo. *Id.* at 608. No such agreement exists as to how we review the application of law to those facts. *Id.* We need not settle the matter because the district court's decision to impose the enhancement survives even de novo review.

The Sentencing Guidelines instruct district courts to impose a two-level increase to the defendant's offense level whenever a defendant (1) "willfully obstructed or impeded, or attempted to obstruct or impede, . . . the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense." U.S.S.G. § 3C1.1. The Guidelines' application notes provide that the enhancement may apply to conduct occurring prior to the start of an investigation, "if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction." *Id.* § 3C1.1 cmt. n.1. The Guidelines' notes also provide a non-exhaustive list of examples of the conduct to which the enhancement was intended to apply and not apply. *Id.* § 3C1.1 cmt. n.3. "[T]hreatening, intimidating, or otherwise unlawfully influencing a co-defendant . . . [or] witness, . . . directly or indirectly, or attempting to do so," are examples of conduct to which the enhancement should apply. *Id.* § 3C1.1 cmt. n.4.

This court has held that "intentional attempt[s] at intimidation" are sufficient to support the enhancement. *United States v. Robinson*, 813 F.3d 251, 263 (6th Cir. 2016); *United States v. Bright*, 789 F. App'x 947, 952 (6th Cir. 2019). "A defendant has obstructed justice when his behavior 'can be reasonably construed as a threat.'" *Robinson*, 813 F.3d at 263 (quoting *United States v. Kamper*, 748 F.3d 728, 744 (6th Cir. 2014)). "Threats alone are enough to justify the enhancement." *United States v. Parsons*, 798 F. App'x 922, 927 (6th Cir. 2020) (citing *United States v. Brown*, 237 F.3d 625, 627–28 (6th Cir. 2001)).

14

Case No. 19-1220, *United States v. Fisher*

In *Parsons*, this court upheld the imposition of the enhancement when Parsons "attempt[ed] to induce others into threatening or even killing law enforcement officials involved in his prosecution." *Id.* at 928. The threats do not have to have an "actual effect," rather the enhancement covers attempted and successful obstruction. *Id.* The enhancement also applies to a defendant's "'attempt to indirectly threaten a witness' through a third party, even where the witness may never learn of the threat." *Id.* (quoting *United States v. Talley*, 443 F. App'x 968, 972–73 (6th Cir. 2011)).

Fisher asserts that application of the enhancement was improper because his post "snitches get stiches" was too broad to be considered a threat against any individual and the assault on the state witness at SMB-member McClure's trial occurred in January 2015 and his conduct occurred between September and November 2015, so the assault could not have related to Fisher's offenses of conviction. At the sentencing hearing, however, the government explained that Fisher's January 2015 conduct fell within the period where Fisher knew about the ongoing federal investigation as the investigation of the SMB began in 2014. Additionally, contrary to Fisher's contention that his threats were only general and not directed at any one person, Fisher was in a physical altercation with a state witness during the trial. Moreover, the day after Fisher was involved in this confrontation, he posted on Facebook "snitches get stiches." DE 1417, Sentencing Tr., PageID 18,696; DE 1585, Exhibits, PageID 22,180. The next day Fisher clarified further and posted on Facebook that McClure "beat his case [to]day! I hit the snitching ass lil n***a in his mouth and almost went [to] jail at Frank Murphy. The lil n***a was still trying [to] snitch after I hit him in his shit, some n***as never learn!" DE 1585, Exhibits, PageID 22,179; DE 1417, Sentencing Tr., PageID 18,696. Fisher's direct and indirect threats and intimidation directly fall within the scope of the obstruction of justice enhancement. The district court did not err in imposing this enhancement.

3.

Fisher also argues that the district court erred in imposing a sentence enhancement for possession of three or more firearms during the commission of an offense. *See* U.S.S.G. § 2K2.1(b)(1)(A).

Case No. 19-1220, *United States v. Fisher*

Under section 2K2.1(b)(1)(A), a court will increase a defendant's offense level if the offense involved three to seven firearms. The government argued and the district court concluded that Fisher's possession of the AK-47 was relevant conduct that coincided with Fisher's possession of the Bushmaster.

We accept a district court's factual findings made at sentencing unless they are clearly erroneous. *United States v. Phillips*, 516 F.3d 479, 483 (6th Cir. 2008). "Because a district court's relevant-conduct determination [under U.S.S.G. § 2K2.1(b)(1)(A)] involves the application of law to facts, we review de novo." *United States v. Amerson*, 886 F.3d 568, 573 (6th Cir.2018) (citing *Phillips*, 516 F.3d at 483). The government bears the burden of proof, by a preponderance of the evidence, that Fisher's possession of the AK-47 was relevant conduct. *Phillips*, 516 F.3d at 483.

To calculate the number of firearms involved in the offense under section 2K2.1(b)(1), the Guidelines' note instructs courts to "count only those firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed." U.S.S.G. § 2K2.1 cmt. n.5. To determine if an "offense" involved multiple firearms, courts assess "relevant conduct": "the court looks to whether the activity was 'part of the same course of conduct or common scheme or plan as the offense of conviction.'" *United States v. Bowens*, 938 F.3d 790, 798 (6th Cir. 2019) (quoting U.S.S.G. § 1B1.3(a)(2)). Offenses are part of the "same course of conduct" if the offenses are "sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3 cmt. n.5(B)(ii). The Guidelines focus on three factors: regularity, similarity, and timing. *Id.* The factors are assessed on a sliding scale: "[w]hen one of the above factors is absent, a stronger presence of at least one of the other factors is required." *Id.*; *see also Bowens*, 938 F.3d at 800; *United States v. Hill*, 79 F.3d 1477, 1482 (6th Cir. 1996).

First, as to regularity, the government offered Fisher's Facebook posts, photographs, and videos from Fisher's iPad showing that Fisher possessed the AK-47 rifle from January to October 2015. Officers executing the search warrant at Fisher's residence also seized ammunition commonly used in AK-47 rifles, as well as various other firearms. Additionally, the government's evidence at trial demonstrated that SMB members regularly congregated at Fisher's residence and used it as a place to store firearms. The government provided sufficient evidence that Fisher regularly possessed the firearms.

Case No. 19-1220, *United States v. Fisher*

Second, the degree of similarity is strong. "The relevant conduct—illegally possessing firearms as a felon—is identical to the offense of conviction." *Phillips*, 516 F.3d at 485. Moreover, the AK-47 was possessed at the same location—Fisher's residence—as the Bushmaster rifle and the Ruger handgun. *See United States v. Henry*, 819 F.3d 856, 865 (6th Cir. 2016) (noting similarity when the firearm sales occurred at the same location).

Third, regarding timing, the Facebook photographs, posts, and iPad videos show that Fisher concurrently possessed both the Bushmaster and AK-47 for most of 2015. We have favorably cited out-of-circuit cases that conclude "contemporaneous, or nearly contemporaneous, possession of uncharged firearms is . . . relevant conduct in the context of a felon-in-possession prosecution." *Phillips*, 516 F.3d at 483 (quoting *United States v. Powell*, 50 F.3d 94, 104 (1st Cir. 1995)). Our cases have "generally upheld the relevant conduct designation where the offenses were within a nine-month period." *Id.* at 483–84 (surveying cases); *see also Amerson*, 886 F.3d at 574; *United States v. Conway*, 513 F.3d 640, 642–43 (6th Cir. 2008). Given the simultaneous possession of the firearms, the timing factor also strongly favors including the AK-47 possession as relevant conduct.

Fisher's reliance on *Amerson* is misplaced. In *Amerson*, the court found that, although the timing factor was strong, there was a complete absence of the regularity factor and weak evidence of the similarity factor. 886 F.3d at 574–77. Here, in contrast, there is strong evidence on each of the course-of-conduct factors.

The district court did not err in holding that possession of the AK-47 was part of the same course of conduct as Fisher's possession of the Bushmaster rifle and Ruger handgun.

III.

For the reasons stated we affirm Fisher's conviction and sentence.